**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARIO HENRY, as Administrator of** | ) | |
| **the Estate of GWYNETH E. HENRY and as** | ) | **C.A. No. 10-260 Erie** |
| **Guardian of STYLE HENRY, a minor, and** | ) | |
| **ALYSHIA M. RICHARDSON, as** | ) | |
| **Administratrix of the Estate of TYREESHA L.** | ) | **District Judge McLaughlin** |
| **RICHARDSON and as Guardian of DEONTAY** | ) | **Magistrate Judge Baxter** |
| **RICHARDSON, a minor,** | ) | |
|              **Plaintiffs** | ) | |
| | ) | |
|              **v.** | ) | |
| | ) | |
| **CITY OF ERIE, et al.,** | ) | |
|              **Defendants.** | ) | |


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


**I.     RECOMMENDATION**

It is respectfully recommended that:

1.     Defendant City of Erie's motion to dismiss [ECF No. 10]
be granted; and

2.     The motion to dismiss filed on behalf of Defendants The Housing
Authority of the City of Erie, John E. Horan, and Joseph
Angelotti, be granted in part and denied in part.


**II.     REPORT**

**A.     Relevant Procedural and Factual History**

On October 25, 2010, this civil action was commenced pursuant to 42 U.S.C. § 1983, by

Plaintiff Mario Henry, as Administrator of the Estate of his deceased mother, Gwyneth E.

Henry, and as Guardian of his minor sister, Style Henry, and Plaintiff Alyshia M. Richardson, as

Administratrix of the Estate of her deceased sister, Tyreesha L. Richardson, and as Guardian of

her minor nephew, Deontay Richardson.  Named as Defendants are:  City of Erie ("Erie"); The

Housing Authority of the City of Erie ("HACE"); John E. Horan, Executive Director of HACE

("Horan"); Joseph Angelotti, Section 8 Housing Inspector for HACE ("Angelotti"); and Brett C.

Hammel and Patricia A. Hammel, his wife (collectively referred to as "Hammel").

The claims in this case arise from a house fire that occurred during the early morning hours of July 25, 2010, and caused the deaths of Tyreesha Richardson ("Ms. Richardson") and Gwyneth Henry ("Ms. Henry"). (ECF No. 1, Complaint, at ¶ 12). The fire took place at a duplex rental unit owned by Hammel in the City of Erie at 933 West 18th Street. (Id. at ¶ 14). At the time, Ms. Richardson was renting the second floor apartment of the duplex, which also included a third floor space where Ms. Richardson had her bedroom.[1] Ms. Richardson's two children had their own bedroom on the second floor. Neither child was home at the time of the fire. (Id.). The only occupants of the second floor apartment on the night of the fire were Ms. Richardson and Ms. Henry, who were found lying dead on the floor of Ms. Richardson's third floor bedroom. Both women died from smoke inhalation with carbon monoxide toxicity. (Id. at ¶ 16). Plaintiffs allege that, at the time of the fire, "the third floor bedroom failed to have a safe, alternate means of egress in case of fire and, upon information and belief, ... failed to have a smoke detector." (Id. at ¶ 17).

At the time of her death, Ms. Richardson was a participant in the United States Housing and Urban Development ("HUD") Section 8 Housing Choice Voucher program ("Section 8 Housing program"). (Id. at ¶ 24). HACE administers the Section 8 Housing program in the City of Erie. (Id.). Under the Section 8 Housing program, HUD pays rental subsidies to HACE so that eligible families can afford decent, safe, and sanitary housing. (Id. at ¶ 26). If a family is deemed eligible and is selected for participation in the Section 8 Housing program, HACE gives the family a voucher that may then be presented by the family to a private landlord to determine the landlord's willingness to participate in the program. (Id. at ¶ 31-32). If the landlord is willing to participate, the family must then request HACE to approve the tenancy, which

---

[1]

The first floor apartment was occupied by another tenant who is not a party to this lawsuit.

approval may only be given after HACE determines, *inter alia*, that: (1) the unit is eligible; (2) the unit has been inspected by HACE and meets the Housing Quality Standards ("HQS") required by HUD; (3) the proposed lease includes the "tenancy addendum" prescribed by HUD; and (4) the rent is reasonable. (Id. at ¶ 33). If HACE approves the tenancy, the owner and HACE execute a Housing Assistance Payment contract ("HAP Contract"), which, among other things, requires HACE to pay to the owner the difference between the family's rental contribution to the owner and the rent set forth in the lease between the family and the owner ("HAP payments"). (Id. at ¶ 35). Before any HAP payments are made, HACE must inspect the unit to determine whether it meets the HQS. (Id. at ¶ 45). HACE must also make an annual inspection of unit during the term of the HAP Contract to determine whether the owner is maintaining the unit in accordance with HQS. (Id. at ¶ 46).

Here, the initial inspection of Ms. Richardson's second floor apartment was conducted by Defendant Angelotti on March 27, 2006. (Id. at ¶ 66). At that time, the apartment failed the inspection because, among other things, there were no smoke detectors or fire exits. (Id. at ¶ 67). Accordingly, Defendant Angelotti notified Defendant Hammel that the proposed lease for the second floor apartment was disapproved and that the following were among the "repairs and/or corrections" that were needed:

> 4. In the third floor bedroom:
>    a. Install a smoke detector.
>    b. Secure the railing.
>    c. A fire escape ladder must be in place for a second means of egress.

(Id. at ¶ 68).

On April 25, 2006, Defendant Angelotti allowed Ms. Richardson's apartment to pass inspection, even though, Plaintiffs allege, a fire escape ladder was never installed. (Id. at ¶ 69). Plaintiffs allege further that the apartment passed inspection four times in 2007, two times in 2009, and once in 2010, despite the fact that there was no fire escape ladder or other safe means

of egress from the third floor bedroom. (Id. at ¶¶ 70, 72, 74).

Plaintiffs allege that Defendant Erie "by established habit, custom and practice," does not inspect property owned by a private individual whose rent is subsidized under the Section 8 Housing program, to ensure that the property complies with its applicable housing code. (Id. at ¶¶ 80-81).  Plaintiffs claim that Defendant Erie's practice of excluding Section 8 properties from its housing inspection program violates the equal protection clause of the fifth and fourteenth amendments to the United States Constitution.  In addition, Plaintiffs claim that Defendants HACE, Horan, and Angelotti (hereinafter collectively referred to as "HACE Defendants") violated the civil rights of Ms. Richardson and Ms. Henry by allegedly permitting Ms. Richardson's apartment to pass inspection for inclusion in the Section 8 Housing program despite its alleged noncompliance with HQS.  Finally, Plaintiffs claim that Defendants Hammel were negligent in failing to provide an alternate means of exit in case of fire and in failing to have a smoke detector in Ms. Richardson's third floor bedroom.

Defendant Erie and the HACE Defendants have filed motions to dismiss [ECF Nos. 10 and 12, respectively] arguing, *inter alia*, that Plaintiffs have failed to state a cause of action upon which relief may be granted against any of said Defendants.[2]  Plaintiff has since filed responses in opposition to said motions [ECF Nos. 20, 22], and reply briefs have been filed by the Defendants. [ECF Nos. 21, 23].  This matter is now ripe for consideration.

**B.** **Standard of Review**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the

---

[2]

Defendants Hammel have filed an answer to Plaintiffs' complaint and, thus, Plaintiffs' claim against them will not be addressed herein.

complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S.  265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the *Twombly/Iqbal/Phillips* line of cases, as follows:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible.  This then

"allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."

* * *

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).


## C. Discussion

### 1. Defendant Erie

In January 2007, Defendant Erie placed in effect City of Erie Codified Ordinance 330 ("Ordinance"), which provides for the registration and licensing of rental properties within the city limits. Under the Ordinance, residential landlords are required to register their properties, pay a registration fee, and undergo a biannual inspection of each property to ensure compliance with the Uniform Construction Code, which incorporates, among other codes, the International Property Maintenance Code and the International Fire Code. (*City of Erie Ordinance*, Article 1503.21(a)). However, properties owned by HACE are specifically exempted from the Ordinance's registration, licensing, and inspection provisions. (*City of Erie Ordinance*, Article 330.05). In addition, by policy, custom, and practice, Defendant Erie does not inspect properties

owned by private landlords who participate in the Section 8 Housing program, as such properties are subject to HQS inspections by HACE.

Plaintiffs claim that Defendant Erie's policy and practice of excluding privately-owned Section 8 properties from the Ordinance's inspection program violates the equal protection clause of the Fifth and Fourteenth Amendments.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike' " Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996), quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "When a state policy does not adversely affect a suspect class or impinge upon a fundamental right, all that is constitutionally required of the state's program is that it be rationally related to a legitimate state object." Coakley v. Murphy, 884 F.2d 1218, 1222 (9th Cir. 1989), citing Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314 (1976).

In this case, all parties agree that residential tenants are not members of a suspect class and that a fundamental right is not at issue. Thus, Plaintiff's equal protection claim is subject to rational basis review. A classification subject to rational basis review "'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" United States v. Walker, 473 F.3d 71, 77 (3d Cir. 2007), quoting Heller v. Doe, 509 U.S. 312, 320 (1993). "Consequently, the principles of equal protection are satisfied 'so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decision maker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'" Walker, 473 F.3d at 77, quoting Fitzgerald v. Racing Ass'n of Central Iowa, 539 U.S. 103, 107

(2003).  See also Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d Cir. 2002)(finding that, in applying the rational basis standard, "we are free to consider any conceivable legislative purpose so long as it reasonably could have been entertained by the legislature")(citation omitted); Donatelli v. Mitchell, 2 F.3d 508, 515 (3d Cir. 1993)(a classification subject to rational-basis review is accorded a strong presumption of validity and is also to be accorded a "high degree of deference").  Furthermore, "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." FCC v. Beach Communications, Inc., 508 U.S.307, 315 (1993).

Here, Defendant Erie propounds that its distinction between Section 8 properties and non-Section 8 properties "is rationally related to the legitimate state interest in the efficient use of governmental resources in the inspection of residential rental units for health and safety." (ECF No. 10, Defendant Erie's Motion to Dismiss, at ¶ 3).  In furtherance of this argument, Defendant Erie explains that its conduct of residential inspections involves manpower and the expenditure of time and money.  Because the Section 8 program already requires annual inspections of Section 8 properties, Defendant Erie argues that adding the biannual inspections required by its Ordinance would involve an unnecessary duplication of effort, expense and administrative burden, the avoidance of which constitutes a rational basis for the distinction at issue. (ECF No. 11, Defendant Erie's Brief, at p. 7).  The Court finds this to be a reasonably plausible rational basis for Defendant Erie's policy and practice of exempting privately owned Section 8 properties from its Ordinance's inspection requirements.

Accordingly, Plaintiff's equal protection claim against Defendant Erie should be dismissed for failure to state a claim upon which relief may be granted.

### 2.     HACE Defendants

#### a.     *Monell* Claim

Plaintiffs assert that the HACE Defendants are liable under 42 U.S.C. § 1983 for violating the civil rights of Ms. Richardson and Ms. Henry by allegedly failing to uphold their obligations under the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Housing Act"), and its implementing regulations found principally at 24 C.F.R. § 982.  In particular, Plaintiffs claim that Defendants Horan and Angelotti "deprived Ms. Richardson and Ms. Henry of their right to an apartment that was 'safe and habitable' and an inspection process that to [sic] ensure that Ms. Richardson's apartment meet [sic] or exceeded the housing quality standards when [Defendant Angelotti] initially allowed the apartment to 'pass' its initial inspection on April 25, 2006 even though the third floor bedroom failed to have an alternate and safe means of exit in case of fire and, upon information and belief, failed to have a smoke detector in the third floor bedroom." (ECF No. 1, Complaint, at ¶ 91).

The HACE Defendants have moved to dismiss this claim, arguing that neither the Housing Act, nor its implementing regulations, either expressly or impliedly grants Section 8 Housing program participants a private right of action against a public housing authority ("PHA"), such as HACE, based upon the PHA's alleged failure to enforce housing quality standards.  The Court agrees.

First, it is beyond dispute that The Housing Act does not expressly create a private cause of action under § 1983 enabling a Section 8 Housing program participant to enforce its provisions.  See Hill v Richardson, 7 F.3d 656, 658 (7th Cir. 1993)("[Section] 1437f does not create a private right of action"); Kirby v. Richmond Redevelopment & Housing Auth., 2005 WL 5864797, at *7 (E.D.Va. Sept. 28, 2005), aff'd 194 F.Appx. 105 (4th Cir. 2006)("No express private right of action exists in [the Housing Act] or the regulations enabling a voucher

participant to enforce the provisions"); <u>Johnson v City of Detroit</u>, 319 F.Supp.2d 756, 764 (E.D.Mich. 2004), <u>aff'd</u> 446 F.3d 614 (6th Cir. 2006)("Nothing in [Sections 1437 and 1437f] establishes a clear and unambiguous intent by Congress to create privately enforceable rights under § 1983 to ensure compliance with housing quality standards"); <u>Swift v. McKeesport Housing Authority</u>, 2009 WL 3856304, at *10 n. 4 (W.D.Pa. Nov. 17, 2009)("Section 8 of the [Housing Act] does not contain an express private right of action"); <u>Montgomery v. City of New York</u>, 2010 WL 3563069, at *3 (S.D.N.Y. Sept. 7, 2010)("Housing Act does not expressly grant a private right of action to individuals who... are suing HUD over the poor quality of their Section 8 housing").

The question, therefore, is whether or not Section 1437f of the Housing Act creates an implied private right of action to sue for violations of Section 8.  To date, this issue has not been addressed by either the Supreme Court or the Third Circuit.  Nonetheless, every other court that has addressed the issue has determined that no implied right of action exists under Section 8. <u>See</u>, <u>e.g.</u>, <u>Banks v. Dallas Housing Authority</u>, 271 F.3d 605, 609-10 (5th Cir. 2001)(dismissing Section 8 tenants' suit against the PHA for failing to meet and enforce HQS, finding that no implied right of action was granted tenants under 42 U.S.C. § 1437f(e) because Congress merely intended to place a condition on a property owner's receipt of assistance payments, not to confer a benefit upon tenants of public housing); <u>Reynolds v. PBG Enterprises, LLC</u>, 2011 WL 2678589, at *9 (E,D,Pa, July 6, 2011)(holding that Sections 1437, 1437f, and 1437d of the Housing Act do no create personal rights); <u>Montgomery</u>, 2010 WL 3563069, at *5 (joining "a number of other courts in concluding that no implied right of action exists in Section 1437f(o)(8)"); <u>Gilchrist v. Bakshi</u>, 2009 WL 4909439, at *2-3 (D.Md. Dec. 10, 2009)(holding that the Housing Act does not create a federal right of action against HUD for failing to enforce a landlord's compliance with the HQS); <u>Swift</u>, 2009 WL 3856304, at *10 n.4 (finding that "there is no implied private right of action under Section 8 of the [Housing Act]"); <u>Kirby</u>, 2005 WL

5864797, at *8 (holding that "no implied private right of action for Section 8 voucher participants exists in 42 U.S.C. § 1437f"); <u>Rodgers v. Garland Hous. Agency</u>, 2001 WL 1029516, at *3 (N.D.Tex. Aug. 21, 2001)("numerous decisions support the conclusion that the [Housing Act] does not permit an implied private right of action under Section 8 programs"); <u>Green v. Konover Residential Corp.</u>, 1997 WL 736528, at *8 (D.Conn. 1997)(finding that no private right of action exists under § 1437 "for failure to maintain the premises in a safe and sanitary condition," because Congress's intention was that "HUD should enforce the required conditions by asserting its rights under the HAP contracts, thereby foreclosing private enforcement of the requirements under the Housing Act").

Interestingly, Plaintiffs concede that no court has recognized the existence of an implied private right of action in favor of Section 8 tenants under the Housing Act. Nevertheless, Plaintiffs boldly assert that such a right does exist under the three part test set forth in <u>Blessing v Freestone</u>, 520 U.S. 329, 340-41 (1997), to determine whether a federal statute creates a private right enforceable under § 1983:

> (1) Congress must have intended the provision in question to benefit the plaintiff; (2) the plaintiff must demonstrate that the right allegedly protected by the statute is not so 'vague and amorphous' that its judicial enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the states (i.e., the provision giving rise to the asserted rights must be couched in mandatory, rather than precatory terms).

However, the Supreme Court has since limited the inquiry, holding that the controlling factor is the unambiguous intent of Congress to create a private right of action under § 1983. <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 283-85 (2002). "'The question whether Congress ... intended to create a private right of action [is] definitively answered in the negative' where a 'statute by its terms grants no private rights to any identifiable class.'" <u>Id</u>. at 283-84, <u>quoting</u> <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 576 (1979). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefitted.'" <u>Gonzaga</u>, 536 U.S. at 284, <u>quoting</u> <u>Cannon</u>

v. University of Chicago, 441 U.S. 677, 692 n. 13 (1979).  In addition, "a plaintiff suing under an implied right of action ... must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*."  Gonzaga, 536 U.S. at 284, quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001)(emphasis in original).  "[U]nless Congress 'speak[s] with a clear voice,' and manifests 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983" Gonzaga, 573 U.S. at 281.

The Supreme Court has recognized an implied private right of action in statutes that are "phrased 'with an *unmistakable focus* on the benefited class.'" Cannon, 441 U.S. at 691 (emphasis added).  Such an unmistakable focus on Section 8 eligible families is not present in the Housing Act.  Instead, the Section 8 voucher subsection of 42 U.S.C. § 1437f focuses primarily on the duties and authority of both the Secretary of HUD and the PHAs, along with the eligibility requirements of families.  See 42 U.S.C. § 1437f(o).  In particular, 42 U.S.C. § 1437f (Section 8) regulates the expenditure of federal funds by HUD for low-income housing assistance by authorizing the Secretary of HUD to enter into "annual contributions contracts" ("ACC's") with PHAs, such as HACE.  Under these ACC's, the PHAs may enter into contracts to make assistance payments to owners of existing dwelling units under Section 8 (for low-income housing assistance). 42 U.S.C. § 1437f(b).  Under 42 U.S.C. § 1437d(f)(1), each ACC "shall require that the [PHA] maintain its public housing in a condition that complies with the standards which meet or exceed the housing quality standards ["HQS"] under paragraph (2)."  Paragraph (2) states that the "Secretary shall establish housing quality standards ... that ensure that public housing dwelling units are safe and habitable." Id. at 1437d(f)(2). The HQS under this section "shall, to the greatest extent practicable, be consistent with the standards established under section 1437f(o)(8)(B)(I)." Id.

Nothing in the foregoing provisions establishes a clear and unambiguous intent by Congress to create privately enforceable rights under § 1983 to ensure compliance with HQS.

The statutory provisions cited by Plaintiffs focus on the Secretary of HUD's responsibilities and govern when assistance payments may be made to a PHA such as HACE. The statute confers the authority on HUD to issue HQS for PHAs to follow, but it does not contain language which unambiguously creates rights in Section 8 tenants. While the residents of public housing undoubtedly benefit from the statutory provisions that condition the receipt of federal funds on the requirement to follow HQS, the statute focuses on regulating the Secretary and the PHAs through the Secretary's promulgation of HQS. This focus on the entity being regulated cuts against any intent to create rights enforceable by individual tenants. See Banks, 271 F.3d at 609-10 (tenants of Section 8 housing could not assert cause of action under § 1983 to enforce 42 U.S.C. § 1437(e) because providing decent and safe housing was a condition of federal funds and did not confer enforceable rights).

As the Supreme Court has made clear, statutory language that merely benefits putative plaintiffs without specific rights-creating language is insufficient to confer a new federal right enforceable under § 1983. Gonzaga, 536 U.S. at 283. In addition, the Court has observed that "statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intention to confer rights on a particular class of persons.' " Sandoval, 532 U.S. at 275, 121 S.Ct. 1511. Gonzaga highlighted the type of rights-creating language that confers a federal right on individuals by citing to the statutory language contained in Title VI of the Civil Rights Act of 1964 and Title IX of the Educational Amendments of 1972. Gonzaga, 536 U.S. at 283-84. Title VI confers individual federal rights, because it provides, in relevant part: "[n]o *person* in the United States *shall ... be subjected to* discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (emphases added). Likewise, Title IX's language creates individual rights by providing: "[n]o *person* in the United States *shall,* on the basis of sex ... *be subjected to* discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphases

added).  In contrast, the Housing Act provisions at issue do not focus on the individual tenant or contain sufficient rights creating language.

In addition to the absence of any rights-creating language in the Section 8 statute itself, HUD's implementing regulations specifically foreclose a private right of action against PHAs based upon HQS violations.  Specifically, 24 C.F.R. § 983.101(d) states:

> **HQS enforcement**.  Parts 982 and 983 of this chapter do not create any right of the family or any party, other than HUD or the PHA, to require enforcement of the HQS requirements **or to assert any claim against HUD or the PHA for damages, injunction, or other relief for alleged failure to enforce the HQS**. (emphasis added).

Similarly, 24 C.F.R. § 982.406 states:

> **Enforcement of HQS.**
>
> Part 982 does not create any right of the family, or any party other than HUD or the PHA, to require enforcement of the HQS requirements **or to assert any claim against HUD or the PHA for damages, injunction, or other relief for alleged failure to enforce the HQS**. (emphasis added).

The Supreme Court has held that HUD's reasonable interpretation of its enabling statute is entitled to deference by the courts.  Wright v. City of Roanoke Redevelopment & Hous. Authority, 479 U.S. 418, 427 (1987)("HUD's opinion as to available tenant remedies under the Housing Act is entitled to some deference by this Court").

In sum, it is clear that the Section 8 provisions at issue in this case do not create a private right of action. Nothing in the statutory text supports such an interpretation, nor is there any persuasive legislative history indicating that Congress intended to create such a right in enacting the Section 8 voucher provisions in 42 U.S.C. § 1437(f).  That being the case, the statute provides no predicate for asserting a claim under 42 U.S.C. § 1983.  Accordingly, The HACE Defendants' motion to dismiss Plaintiffs' *Monell* claim should be granted.

## b. State Created Danger

Plaintiffs assert that the HACE Defendants' approval of Ms. Richardson's apartment for a Section 8 subsidy despite the alleged absence of a fire escape ladder or smoke detector on the third floor, and its subsequent failure to enforce HQS, constituted a "state-created danger" actionable under Section 1983. "The state-created danger doctrine is an exception to the rule that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Soberal v. City of Jersey City, 334 Fed. Appx. 492, 494 (3d Cir. 2009)(internal quotation marks omitted). The exception applies only "when state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention." Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006); see also Sanford v. Stiles, 456 F.3d 298, 304 (2006)(under the state-created danger doctrine, "liability may attach where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process").

To prevail on a state-created danger claim, a plaintiff must establish the following four elements:

    (1)    the harm ultimately caused was foreseeable and fairly direct;

    (2)    a state actor acted with a degree of culpability that shocks the conscience;

    (3)    a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

    (4)    a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright, 443 F.3d at 281 (quotations and footnotes omitted).

"A plaintiff's failure to satisfy any one of the four elements defeats his state-created danger claim." Malar v. Delaware County, 2009 WL 2493775, at *7 (E.D.Pa. Oct. 23, 2009). Nonetheless, the analysis of a state-created danger claim often centers on the fourth element because a state-created danger can exist only where the state has "affirmatively" used its authority to create or enhance the danger to the plaintiff. Bright, 443 F.3d at 282. As the Third Circuit Court explained:

> It is important to stress, for present purposes, that under the fourth element of a state-created danger claim, 'liability under the state-created danger theory is predicated upon the state's **affirmative acts** which work to the plaintiffs' detriments in terms of exposure to danger." D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1374 (3d Cir. 1992)(*en banc*)(emphasis supplied); Brown v. Grabowski, 922 F.2d 1097, 1100-01 (3d Cir. 1990)(finding that DeShaney holds "that a state's failure to take affirmative action to protect a victim from the actions of a third party will not, in the absence of a custodial relationship ... support a civil rights claim"). It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause.

Id.

The Third Circuit has since clarified that the fourth element requires a plaintiff to "(1) show that a state official affirmatively acted to the plaintiff's detriment and (2) establish direct causation between the affirmative act and the result." Soberal, 334 Fed. Appx. at 495.

Here, the HACE Defendants argue that "HACE did not act affirmatively to create or enhance the risks associated with the alleged absence of a fire escape ladder or a smoke detector on the third floor of the premises located at 933 West 18th Street." (ECF No. 13, HACE Defendants' Brief, at p. 15). Instead, the HACE Defendants contend that "Plaintiffs' claims against [them] amount to nothing more than allegations that HACE did not properly inspect the premises and enforce the HQS." (Id.). The Court disagrees.

Plaintiffs allege that the HACE Defendants acted affirmatively to the detriment of Plaintiffs' decedents, in the following ways:

    a.     approving 933 West 18th Street for inclusion in the Section 8

program ... and allowing the second floor apartment to pass inspection each and every year even though it failed to provide adequate exit [from the third floor];

b.      allowing [Defendants Hammel] to continue to receive HAP payments despite their failure to correct HQS violations;

c.      continuing 933 West 18th Street in the Section 8 program despite its failure to comply with HQS.

(ECF No. 1, Complaint, at ¶ 103(a)-©).

Thus, rather than claiming that the HACE Defendants failed to properly inspect the premises at issue, Plaintiffs allege that, despite conducting an initial inspection that disclosed, *inter alia*, the absence of a third floor fire exit (Id. at ¶¶ 67-68), and despite the owners' alleged failure to correct this defect, Defendant Angelotti allowed the premises to pass the initial inspection on April 25, 2006, and HACE approved the premises for the Section 8 Housing program. In addition, Plaintiffs allege that Defendant Angelotti allowed the premises to pass inspection each and every year thereafter, and HACE continued to allow the premises to qualify for a Section 8 subsidy, despite the continued absence of a third floor fire exit, Without these affirmative acts by Defendants Angelotti and HACE, Plaintiffs allege that Ms. Richardson would not have been living in the second floor apartment at 933 West 18th Street, and she and Ms. Henry would not have been killed by the fire. These allegations are sufficient to "show that a state official affirmatively acted to the detriment" of Plaintiffs' decedents. While the question remains whether Plaintiffs can establish direct causation between the affirmative acts and the deaths that resulted from the fire, this is a fact issue that cannot be determined at the pleading stage. It is sufficient for now that Plaintiffs have alleged the existence of such causation. Thus, the Court finds that Plaintiffs' allegations are minimally sufficient to establish the fourth element of their state-created danger claim.

Nonetheless, the HACE Defendants argue further that Plaintiffs cannot establish either the first element, because "[t]he tragedy that befell Plaintiffs' decedents was neither a direct nor

foreseeable result of actions by HACE," or the third element, because "HACE did not occupy a relationship with Plaintiffs' decedents that made them a 'foreseeable victim of the defendant's acts.'" (ECF No. 13, HACE Defendants' Brief, at p. 16). However, the facts, as alleged, indicate otherwise. Once HACE took the affirmative step of approving Ms. Richardson's apartment for the Section 8 Housing program despite the alleged absence of a third floor fire exit and/or smoke detector, it was foreseeable that the occupant(s) of the third floor bedroom would suffer serious injury or death if a fire occurred at the premises. Similarly, Ms. Richardson and Ms. Henry were members of a discrete class of persons (occupants of the third floor bedroom) subjected to the potential harm brought about by the HACE Defendants' alleged actions, as opposed to members of the public in general. Thus, Plaintiffs' allegations satisfy both the first and third elements of a state-created danger claim.

This leaves the second element, which is fitting "[b]ecause the culpability requirement is often the most difficult element for a plaintiff to prove," and "the outcome of a state-created danger case will often turn on this prong." <u>Sanford</u>, 456 F.3d at 305 (citations omitted). The second element requires Plaintiffs to show that "a state actor acted with a degree of culpability that shocks the conscience." <u>Id</u>. at 304. "The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." <u>Id</u>. at 309. "In a 'hyperpressurized environment,'" an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient." <u>Id</u>. The latter standard would appear to be applicable here, as Defendant Angelotti's inspection decisions, as well as HACE's resultant decisions to approve Ms. Richardson's apartment for its Section 8 Housing program, were ones that involved deliberation and unhurried judgment. Thus, under a deliberate indifference standard, a jury could find that the HACE Defendants' actions were conscience-shocking and thereby satisfied the second element of a state-created danger claim.

Based on the foregoing, Plaintiffs' allegations meet all of the threshold requirements for stating a state-created danger claim, and the HACE Defendants' motion to dismiss the same should be denied.

<h3><u>c.</u>        <u>Qualified Immunity</u></h3>

Notwithstanding the foregoing, Defendants Horan and Angelotti seek dismissal of Plaintiffs' state-created danger claim against them based upon the doctrine of qualified immunity.

The doctrine of qualified immunity insulates government officials sued in their individual capacities from liability for damages insofar as their conduct does not violate clearly established rights. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In other words, "qualified immunity shields government officials from suit even if their actions were unconstitutional as long as those officials' actions 'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Burns v. Pennsylvania Department of Corrections</u>, 642 F.3d 163, 176 (3d Cir. 2011) <u>quoting</u> <u>Harlow</u>, 457 U.S. at 818. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." <u>Burns</u>, 642 F.3d at 176, <u>quoting</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, ___, 129 S.Ct. 808, 815 (2009).

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? <u>Saucier</u>, 121 S.Ct at

> 2156.  If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary.  If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established.  See id.  In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Id.

Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002).  See also Doe v. Delie, 257, F.3d 309 (3d Cir. 2001).[3]  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Id.

"Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."  Hope v. Pelzer, 530 U.S. 730, 739 (2002).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  In order for an official "to have 'fair warning' [...] that his or her actions violate a person's rights, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Burns, 642 F.3d at 176 quoting United States v. Lanier, 520 U.S. 259, 270 (1997) and Anderson v. Creighton, 483 U.S. 635, 640 (1987).  However, "'[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law the unlawfulness must be apparent.'"  Burns, 462 F.3d at 176 quoting Wilson v. Layne, 526 U.S. 603, 615 (1999).

---

3

The rigid two-step inquiry set forth in Saucier was relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009).  See also Bumgarner v. Hart, 2009 WL 567227 (3d Cir. 2009).  As the Supreme Court explained: "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case."  Pearson, 555 U.S. at ___, 129 S.Ct. at 821.

Here, Defendants Horan and Angelotti contend that "nothing in reported case law would have given [them] reasonable notice that the conduct alleged against them violated the constitutional rights of Plaintiffs' decedents." (ECF No. 13, HACE Defendants' Brief, at p. 19).[4] They go on to state that "[n]o court has ever found a civil rights violation or imposed liability upon an official of a public housing authority based upon a failure to adequately enforce housing quality standards." (Id.). While this statement may be correct, Defendants oversimplify Plaintiffs' allegations.

Plaintiffs allege more than just a "failure to adequately enforce" HQS; they essentially allege that Defendants Angelotti and Horan deliberately disregarded a known violation of HUD's HQS when they allowed Ms. Richardson's second floor apartment to pass inspection and gain approval under the Section 8 Housing program, despite the alleged absence of a third floor fire exit and/or smoke detector. These challenged actions first occurred in April 2006 and continued through April 8, 2010. The Housing Act's HQS provisions were in effect for years prior to Defendant Angelotti's initial inspection of Ms. Richardson's second floor apartment, and were well within the knowledge of both Defendants Angelotti and Horan. Thus, neither "could have believed, in light of clearly established law, that [his] conduct comported with established legal standards." McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001).

In addition, the state-created danger theory had been clearly established since July 1999, nearly seven years prior to the initial inspection. See Estate of Smith v. Marasco, 318 F.3d 497, 510-11 (3d Cir. 2003) (holding that state-created danger theory was clearly established in July 1999). Thus, the Court finds that the contours of Plaintiffs' decedents' constitutional rights

---

The HACE Defendants initially argue that they are entitled to qualified immunity because Plaintiffs have failed to state a claim for a constitutional violation; however, the Court has already determined that Plaintiffs' allegations sufficiently state a due process claim under the state-created danger doctrine.

under the state-created danger theory were sufficiently clear that a reasonable official would understand that qualifying a residence for Section 8 housing despite its non-compliance with HQS would violate a right. Burns, 642 F.3d at 176 (citations omitted). Accordingly, Defendants Horan's and Angelotti's motion to dismiss Plaintiffs' state-created danger claim against them based on qualified immunity should be denied.

## III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1.   Defendant City of Erie's motion to dismiss [ECF No. 10] be granted; and

2.   The HACE Defendants' motion to dismiss [ECF No. 12] be granted in part and denied in part, as follows:

   a.   The motion to dismiss Plaintiffs' *Monell* claim against the HACE Defendants should be granted, as there is no cognizable private right of action created under the Housing Act;

   b.   The motion to dismiss Plaintiffs' state-created danger claim against the HACE Defendants, based upon the alleged failure to state a claim upon which relief may be granted, should be denied; and

   c.   The motion to dismiss Plaintiff's state-created danger claim against Defendants Angelotti and Horan in their individual capacities, based upon the doctrine of qualified immunity, should be denied.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d

187 (3d Cir. 2007).


                                                     /s/ Susan Paradise Baxter
                                                     SUSAN PARADISE BAXTER
                                                     United States Magistrate Judge


Date:   August 19, 2011

cc:      The Honorable Sean J. McLaughlin
         United States District Judge